VENABLE (BRENT v.). See Case No. 1,842.

VENABLE (FRENCH v.). See Case No. 5,-105.

———

## Case No. 16,913.

### VENABLE et al. v. RICHARDS.

[1 Hughes, 326;[1] 22 Int. Rev. Rec. 299.]

Circuit Court, E. D. Virginia. June 2, 1876, and Sept. 5, 1876.[2]

REMOVAL OF CAUSES—ACTIONS AGAINST REVENUE OFFICERS—INTERNAL REVENUE TAXES—SNUFF—GRANULATED TOBACCO.

1. Suits against revenue officers of the United States, on account of acts done under color of their offices, may be removed from state courts into the courts of the United States.

2. Section 10 of the act of congress, approved March 3, 1875, c. 137 [18 Stat. 473], which repeals all acts in conflict with its provisions, does not repeal section 643 of the Revised Statutes of the United States providing for the removal of suits from the state to the national courts in certain cases.

3. The term "granulated tobacco," used in the second paragraph of section 3368 of the Revised Statutes, is not synonymous with "snuff," but is intended to refer only to chewing and smoking tobacco.

4. Snuff is liable, under the acts of July 20, 1868 [15 Stat. 125], June 6, 1872 [17 Stat. 230], and March 3, 1875 [18 Stat. 473], to a tax of thirty-two cents a pound.

Action of assumpsit. This action was brought in the circuit court of the city of Petersburg. The defendant [George S. Richards] being a collector of internal revenue of

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]
[2] [Affirmed in 105 U. S. 636.]

the United States, and the suit being for taxes collected by him from the plaintiffs as snuff manufacturers, he filed his petition in this court for a writ of certiorari for the removal of the cause out of the state court. His petition was resisted by the plaintiffs [Joseph E. Venable and others] on the ground set forth by the circuit judge (Bond) in the following decision, who overruled their objection and granted the writ. The petition for removal was heard and granted on the 2d June, 1876.

L. L. Lewis, U. S. Atty., for petitioner.

R. G. Pegram and W. P. Burwell, for plaintiffs.

BOND, Circuit Judge. Richards, the defendant in this action, was collector of internal revenue in the district where plaintiffs carried on business as manufacturers of snuff, and required of the plaintiffs the payment of a tax on the snuff manufactured by them, which the plaintiffs alleged was in excess of the tax legally demandable to the amount of five thousand and sixty dollars. The plaintiffs appealed to the commissioner of internal revenue for a reduction of the tax, as required by law, and asked that the excess might be returned to them, which the commissioner refused to do. The plaintiffs brought suit in the circuit court of the state for the city of Petersburg to recover the sum of $5,060.96 so paid in excess of taxes, and the collector filed his petition in this court, under the act of 1866 (Rev. St. § 643 [14 Stat. 306]) for a writ of certiorari to remove the cause from the state court into the circuit court of the United States. This application is resisted on the part of the plaintiffs on the ground that the act of 1875, relating to the jurisdiction of the circuit courts of the United States, and to the removal of causes from the state courts thereto, repealed the act of 1866 relating to the same subject, and that as the defendant has not complied with the provisions of the act of 1875, c. 137. his petition for a writ of certiorari ought to be disallowed.

The sole question, therefore, which the court is called upon to decide is, whether the 10th section of the act of 1875, c. 137, which repeals all acts and parts of acts in conflict with its provisions, repeals the act of 1866, c. 184, now contained in Rev. St. § 643. The act of 1875, by its second section, provides that all suits which arise under the laws of the United States shall be removed in the manner provided in that statute. The act of 1866 (section 643, Rev. St.) provides that, "when any civil suit or criminal prosecution is commenced in any court of a state against any officer appointed under or acting by authority of any revenue law of the United States on account of any act done under color of his office, or of any such law," the proceedings for removal shall be such as it prescribes. So that it appears that to remove a case, under the provisions of the act of

1875, it is necessary only that it arise under a law of the United States, whereas, to remove it under the act of 1866, it is not only necessary that the suit should arise under a law of the United States, but that it should be brought against an officer of the United States, or some one acting under his authority. The act of 1866 related to civil suits and to criminal prosecutions brought against the officers of the United States. The act of 1875 relates to civil causes only. So that, in one respect, it is manifest it was not intended to repeal, and does not repeal, the former act. Again, under the act of 1866 all suits, without respect to the amount involved, may be removed, whereas, under the act of 1875, the matter in dispute must be of the value of $500, exclusive of costs, so that it was not intended to repeal so much of the act of 1866 as allowed the removal of suits, when a revenue officer was concerned, which involved a less amount than $500, because that provision is not in conflict with the act of 1875, allowing the removal of causes involving $500 or upwards. Again, by the act of 1866 the cause may be removed before trial or final hearing, while, under the act of 1875, it must be removed before the term at which it could first be tried, and under the one act a bond must be filed, while the other requires none. the removal being had upon the filing of a petition to that effect merely. It seems to us that the act of 1875 was not passed to restrict, but to enlarge, the jurisdiction of the United States court.

In this suit the United States are the real defendants, and, while in other cases for the safety of litigants it may be necessary to require a bond to be given to abide the result of suit. when a revenue officer is sued, for whom the United States in his official capacity have made themselves responsible, such a requirement is unnecessary, and, when so many officers of the government are to be consulted in respect to the merits of a case, and the propriety and ground of defence, it is not unreasonable that a longer delay in the determination of the question of removal should be given, than in cases between individual citizens who have complete control over their own suits. A general clause repealing all laws in conflict with a previous statute cannot be held to do so by implication. The former statute must be plainly in conflict with the repealing statute before it can be held to be repealed. We do not think the act of 1866 (Rev. St. § 643) is in conflict with the act of March, 1875, c. 137, and the jurisdiction of this court over this suit will be maintained.

On the 5th of September, 1876, the case was heard on its merits. The plaintiffs declared for two items of money claimed by them to have been collected by the defendant, as taxes upon snuff, in excess of the taxes allowed by law. One of these was the item of $4731.84, collected between July, 1872, and March, 1875, on 39,432 pounds, at the rate of 32 cents a pound, whereas the rightful tax was alleged to have been only 20 cents. The other item was for a similar excess of taxation assessed between March, 1875, and June, 1875, on $4226\frac{1}{4}$ pounds of snuff, at 32 cents a pound, instead of 24 cents, alleged to be the lawful tax, the excess being 8 cents a pound, or $338.12. The two items make the aggregate sum of $5,069.96. By stipulation between the parties, the questions of fact as well as of law were submitted to the court for decision, the court being held at this time by the district judge.

HUGHES, District Judge. Before the law of June, 1872, snuff and chewing tobacco were both taxed at the rate of 32 cents a pound. The law of 1872 taxed snuff 32 cents, and granulated tobacco only 20 cents. The plaintiffs insist that snuff and granulated tobacco are the same thing, and, as they were required by the collector (the defendant) to pay 32 cents, or 12 cents more than they say the law exacted before March, 1875, they sue for the difference. By the act of March 3d, 1875, the tax on "granulated" tobacco was raised to 24 cents a pound. After that the plaintiffs still paid 32 cents on their snuff (which they insist was granulated tobacco), or 8 cents more than they say the law allowed, and they sue for the difference. The question is, and it is the only question in the case, what did congress mean by "granulated" tobacco? The first two paragraphs of section 61 of chapter 186 of the acts of the fortieth congress, approved July 20, 1868 (15 Stat. 153), provide as follows:

"On snuff, manufactured of tobacco or any substitute for tobacco, ground, dry, damp, pickled, scented, or otherwise, of all descriptions, when prepared for use, a tax of thirty-two cents per pound. And snuff flour, when sold or removed for use or consumption, shall be taxed as snuff, and shall be put up in packages and stamped in the same manner as snuff."

"On all chewing tobacco, fine-cut, plug, or twist; on all tobacco twisted by hand, or reduced from leaf into a condition to be consumed, or otherwise prepared, without the use of any machine or instrument, and without being pressed or sweetened; and on all other kinds of manufactured tobacco, not herein otherwise provided for, a tax of thirty-two cents per pound."

The forty-second congress passed a law (approved June 6, 1872) amending that of the fortieth congress, but not affecting the clauses just quoted. Section 31 of the latter law (17 Stat. 250, at top), provided that section 61 (of the former act) be amended by striking out all after the second paragraph, and inserting in lieu of what was stricken out, the following words:

"On all chewing and smoking tobacco, fine-cut, cavendish, plug, or twist, cut or granulated, of every description; on tobacco twisted

by hand or reduced into a condition to be consumed, or in any manner other than the ordinary mode of drying and curing, prepared for sale or consumption, even if prepared without the use of any machine or instrument, and without being pressed or sweetened; and on all fine cut shorts and refuse scraps, clippings, cuttings, and sweepings of tobacco, a tax of twenty cents per pound."

The law stood in this condition up to the time of the adoption of the Revised Statutes (June 22, 1874), when the first of the two paragraphs given from the act of 1868 and the paragraph given from the act of 1872 were adopted, as containing the whole law of the subject; the second of the two paragraphs from the law of 1868 having been omitted from the compilation of 1874. It will be seen that the act of 1868 in the paragraphs given classified the tobacco which it referred to into two distinct divisions, calling one of them snuff and the other chewing tobacco. Snuff of every kind, whether ground, dry, or damp, pickled, scented, or not scented, of all descriptions, and snuff-flour were taxed thirty-two cents. And chewing tobacco, whether fine-cut, plug, or twist, or reduced from leaf into a condition to be consumed, or otherwise prepared, was taxed thirty-two cents. The act of 1872 adopted these two paragraphs of the act of 1868 in terms; and by doing so, adopted also of course their classification, into snuff on one hand, and chewing tobacco on the other. But it enlarged the second class so as also to include smoking tobacco of every species. So that the law as it stood after June, 1872, taxed snuff in all its varieties in one class of taxable things, and chewing and smoking tobacco in all their forms, as another class. Under the head of snuff the law of 1872 mentions its different varieties, and adds to them snuff-flour. Under the head of chewing and smoking tobacco, the law of 1872 (and the Revised Statutes of 1874 adopts its language) mentions as the sorts of tobacco intended to be embraced in the classification, fine-cut, cavendish, plug, twist, cut or granulated, every description of these; also tobacco twisted by hand, fine-cut shorts, refuse and scraps, clippings, cuttings, and sweepings. In this enumeration it virtually defines granulated tobacco to be one class of cut tobacco. It seems to be plain, therefore, that the law of 1872 not only so classified and defined snuff, by the language used, as to forbid its being confounded with any of the terms which it used in enumerating the different sorts of chewing and smoking tobacco, but as if to make assurance doubly sure, it defined "cut" tobacco "granulated"; thus, by identifying "granulated" with "cut" tobacco, forbidding its being confounded with "snuff."

When the oral evidence is taken in the trial of the cause, it is proved that "granulated tobacco" is a term not used by the trade. The witnesses examined were each asked what the law meant by "granulated tobacco"; and each one, while asserting that the term was un-

known in the tobacco business, was unable to do more than give his own conjecture of what the statutory term meant, the witnesses seeming to differ widely with each other. None of them, however, spoke in such a way about snuff. There is no doubt what the statute means by "snuff." Practically speaking, granulated tobacco has no existence in actual business, while snuff has. There is no identity between the two articles in practical business, and there can, therefore, be no repugnance between a clause of the law speaking of one of them and a clause speaking of the other.

In construing the acts of congress which employ the term "granulated tobacco," we must interpret it according to the context. So interpreting it, "granulated tobacco" must be classed as a species of chewing or smoking tobacco, and held to be synonymous with "cut tobacco" and not synonymous with "snuff."

Judgment must go for the defendant.

[The above judgment was affirmed by the supreme court, where it was taken on writ of error. 105 U. S. 636.]